UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES OWEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-1186-B |
| | § | |
| STMICROELECTRONICS, INC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant STMicroelectronics, Inc.'s Motion to Dismiss (Doc. 20). For the following reasons, Defendant's Motion is **GRANTED in part** and **DENIED in part.**

## I.

## BACKGROUND[1]

This is an employment discrimination case. Plaintiff Charles Owen (Owen) worked as a temporary attorney at STMicroelectronics, Inc. (STM) from November 2007 to June 2008 and from March 2013 to December 2014. Doc. 21, Def.'s Br. in Supp. of Mot. to Dismiss 12–13 [hereinafter Def.'s Br.];[2] *id.,* Ex. A, EEOC Charge; Doc. 19, Second Am. Compl. ¶ 6. In August 2013, during Owen's second employment stint, a full-time attorney position opened up at STM. Doc. 22-1, Ex. A, EEOC Charge. He applied but was rejected because, according to him, STM was looking for an

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's Second Amended Complaint. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that, when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true").

[2] The Court will refer to the pagination in the bottom middle, rather than lower right hand corner, of Defendant's brief.

experienced attorney who had "not been practicing so long," since these attorneys "were set in their ways and inflexible to doing things differently." Doc. 21, Def.'s Br. 11 (citing Doc. 19, Second Am. Compl. ¶ 7). Later, STM hired "a younger attorney with less experience and capability than Owen for the position he sought," says Owen. *Id.* at 12 (citing Doc. 19, Second Am. Compl. ¶ 11). STM concedes that it hired someone else, but maintains that "[Owen's] allegation that [it] hired a younger person with less experience and capability than [him] for the position he sought is only speculation about th[at] person's age, experience and knowledge and STM's reason to offer the position to someone other than [him]." Doc. 21, Def.'s Br. 12.[3]

Owen now sues STM for violating the Age Discrimination in Employment Act (ADEA). Specifically, he brings claims for (1) disparate treatment and (2) disparate impact, for which he seeks compensatory and punitive damages, in addition to "equitable and/or injunctive relief, and attorney fees and costs." Doc. 22, Pl.'s Resp. to Def.'s Mot. to Dismiss 8–11 [hereinafter Pl.'s Resp.]; Doc. 19, Second Am. Compl. ¶ 20. He alleges that STM "intentionally and willfully violated the ADEA by discriminating against [him] because of his age, and by creating a rule that created a disparate impact against older employees[.]" Doc. 19, Second Am. Compl. ¶ 17. This, he says, "[i]n essence . . . deprived [him] of an employment opportunity because of his age." *Id.*

STM moves to dismiss Owen's disparate impact claim for failure to exhaust administrative remedies; his disparate impact and disparate treatment claims because his complaint "contains only conclusory allegations and therefore does not allege enough facts to state a claim [for either]," and his request for punitive and compensatory damages because they are unavailable under the ADEA.

---

[3] These words come from STM's Assistant General Counsel, Terry Blanchard (Blanchard). *See* Doc. 22-1, Ex. A, EEOC Charge.

Doc. 21, Def.'s Br. 2–3. Owen has since responded to STM's Motion to Dismiss (Doc. 22) and STM has replied. (Doc. 23).The Motion is therefore ready for review.

## II.

## LEGAL STANDARD

A.   *Rule 12(b)(1) Standard—Subject Matter Jurisdiction*

At any stage in the litigation, any party may move to dismiss under Rule 12(b)(1) for lack of subject matter-jurisdiction. *King v. Life Sch.*, 809 F. Supp. 2d 572, 576 (N.D. Tex. 2011) (citations omitted). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." *Id.* (quoting Fed. R. Civ. P. 12(h)(3)). This is because "[f]ederal courts are courts of limited jurisdiction," and, "without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

To establish that a court has jurisdiction to hear an ADEA claim, a litigant must demonstrate that she exhausted her administrative remedies, as that is "a precondition to seeking . . . judicial relief." *Pacheco v. Mineta*, 448 F.3d 783, 795 (5th Cir. 2006). This requirement is construed liberally—"a . . . cause of action 'may be based not only on the specific allegations made by the employee's initial E[qual] E[mployment] O[pportunity] C[ommission] [C]harge, but also upon any kind of discrimination like or related to the charge's allegations.'" *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (citation omitted).[4] Still, "the scope of . . . [the] [law]suit . . . extend[s] . .

---

[4] Though *Pacheco* and *Fine* are Title VII cases, "[t]he exhaustion of administrative remedies requirement under the ADEA is nearly identical to that of Title VII." *Evenson v. Sprint/United Mgmt. Co.*,

. no further than . . . the scope of the . . . investigation . . . that c[an] reasonably grow out of the administrative charge." *Id.* (citations omitted).

B.    *Rule 12(b)(6) Standard—Failure to State a Claim Upon Which Relief Can Be Granted*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted). When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged–but it is has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft*, 556 U.S. at 679 (quoting Fed. R. Civ. P.  8(a)(2)).

---

3:08-CV-0759, 2008 WL 4107524, at *6 (N.D. Tex. Aug. 21, 2008) (citing 42 U.S.C. § 2000e-5; 29 U.S.C. § 626)).

When considering a Rule 12(b)(6) motion, the Court is generally confined to the complaint and any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit has recognized a possible, limited exception, though, in that documents attached to a defendant's motion to dismiss may be "considered part of the pleadings if they are . . . central to [plaintiff's] claim" and are referenced in the complaint. *Collins*, 224 F.3d at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).[5] Furthermore, the Court can take notice of matters of public record when deciding a 12(b)(6) motion. *Bennett v. JPMorgan Chase*, No. 3:12-CV-212, 2013 WL 655059, at *3 (N.D. Tex. Feb. 5, 2013) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

## III.

## ANALYSIS

A.   *The Disparate Impact Claim*

Owen sues here on a disparate impact theory of discrimination. This requires he identify (1) "an employment practice [that] is facially neutral" but (2) "creates such statistical disparities disadvantaging a protected group that it is functionally equivalent to intentional discrimination." *McDade v. Smurfit-Stone, Inc.*, No. 3:05-CV-1478, 2006 WL 435315, at *2 (N.D. Tex. Feb. 23, 2006) (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).

   1.   <u>Whether Owen Exhausted His Administrative Remedies</u>

STM moves to dismiss Owen's disparate impact claim under Rule 12(b)(1), challenging this

---

[5] There may also be an additional requirement that the plaintiff not object to or appeal the underlying district court decision to consider those documents. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins,* 224 F. 3d at 498–99)).

Court's subject-matter jurisdiction over the claim. But "[e]xhaustion in the ADEA context is . . . a condition precedent rather than a jurisdictional prerequisite to suit." *King*, 809 F. Supp. 2d at 578 (citing *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir.2005)). Accordingly, this Court will treat STM's Motion to Dismiss Owen's disparate impact claim under Rule 12(b)(6) rather than 12(b)(1).[6]

Either way, the ADEA requires a plaintiff exhaust her administrative remedies before filing a civil lawsuit. 29 U.S.C. § 626(d); *Julian v. City of Houston*, 314 F.3d 721, 725 (5th Cir. 2002); *Castro v. Tex. Dep't of Criminal Justice*, 541 F. App'x 374, 379 (5th Cir. 2013); *see also McDade*, 2006 WL 435315, at *1. She does this by filing a charge with the EEOC. *McDade,* 2006 WL 435315, at *1 (citations omitted). If dissatisfied with the Commission's decision, she then may file a civil suit, though that suit is "limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the EEOC Charge." *Id.* (citing *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000)).

The question before the Court now, then, is whether Owen's disparate impact claim "could have been "reasonabl[y] . . . expected to grow out of [his EEOC] [C]harge of discrimination." More specifically, the Court must determine whether Owen's charge provides enough information so that a resulting EEOC investigation would have touched upon the facially neutral, but actually discriminatory, employment policy Owen says is present here—and whether such a policy existed. *Id.*

STM argues that Owen's charge could not possibly have led the EEOC to launch a disparate

---

[6] As STM points out, this is "'a distinction without a difference[,] since failure to exhaust administrative remedies would typically warrant dismissal under either rule.'" Doc. 21, Def.'s Br. (citing *White v. Averitt Express, Inc.*, 3:10-CV-2504, 2011 WL 3652502, at *2 (N.D. Tex. Aug. 19, 2011)).

impact investigation. Blanchard's comments about wanting to hire an attorney who had "not been practicing so long," since such attorneys "were set in their ways and inflexible to doing things differently," could *not* be read as "code words" referring to age, according to the company. Doc. 21, Def.'s Br. 7–8 (citing Doc. 19, Second Am. Compl. ¶¶ 7–9). Therefore they could not have led the EEOC to investigate whether STM maintained a facially neutral policy that actually had a disparate impact upon older employees. *Id.* at 8. To argue otherwise would run afoul of *Iqbal*'s plausibility standard, says STM, because these so-called "code words" "are no more than labels and conclusions." *Id.* Further, Owen has identified no "specific practices . . . that disproportionately affected a protected group," according to STM. *Id.* (citations omitted).

But Owen says STM's comments about "experienced" attorneys—which he referenced in his EEOC Charge—are laden with "code words," suggesting a policy that disparately impacts older individuals, despite appearing facially neutral. Doc. 22, Pl.'s Resp. 3, 9. And Owen argues that this is enough to support his claim, as, for purposes of exhaustion at least, courts look only toward whether a complaint's allegations fall within "the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." Doc. 22, Pl.'s Resp. 3 (citing *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

In essence, this boils down to whether Blanchard's comments to Owen can be read as a facially neutral employment *policy,* because "[a] neutral employment policy is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justification for the policy." *Pacheco,* 448 F.3d at 792. They cannot. Blanchard's comments were directed toward Owen—and only Owen—in response to his application

for an attorney position with STM. *See* Doc. 22-1, Ex. A, EEOC Charge ("*After* [*Owen*] *submitt*[*ed*] [his] *resume* . . . Blanchard . . . informed [him] that[,] although STM[] was looking for an experienced attorney, the position was for those whom had not 'been practicing so long,'" because such attorneys "'were set in their ways and inflexible to doing things differently.'"). These words do not constitute a *policy*. This stands in sharp contrast to a case like *Gomes v. Avco Corp.*, where the plaintiff pointed to an employer's requirement that employees have eight-years experience in order to be considered for promotion. 964 F.2d 1330, 1334 (2nd Cir. 1992). The requirement there was codified in the machinists' collective bargaining agreement, *id.* at 1331, rather than merely spoken and memorialized in an employee's EEOC Charge. *See* Doc. 22-1, Ex. A, EEOC Charge. Thus, even though Owen is not necessarily required to explicitly plead disparate impact in his EEOC Charge in order to exhaust his administrative remedies, he must offer enough for the Commission's resulting investigation to reach such a claim. Thus while the plaintiff in *Gomes* did not specifically invoke the eight-year requirement to state a disparate impact claim in his EEOC Charge, he nevertheless referenced a *policy*, thereby raising the possibility that, after investigating the plaintiff's disparate treatment claim, the Commission might investigate the propriety of the eight-year requirement in general (e.g. look into a possible disparate impact claim).

Thus, because Owen's EEOC Charge could not have led to an investigation encompassing a disparate impact claim, he cannot raise it here. While "[c]ases from other Circuits across the country are split on the issue, . . . it appears that more courts prohibit a disparate impact claim that was not raised in an EEOC Charge than permit it." *McDade*, 2006 WL 435315, at *2 (citations omitted)."[C]laims of disparate impact are conceptually different from claims of disparate treatment," and "[a]n EEOC investigation in this case would not have encompassed a disparate impact claim,"

since Owen's charge demonstrates he was not allowed to interview for an "individual-specific reason[] and not pursuant to a neutral . . . policy." *Id.* (citations omitted). Accordingly, "[t]o permit a disparate impact claim to be raised at this point would be to circumvent the EEOC's investigatory and conciliatory role." *Id.* (citation omitted); *see also Walker v. New Beginning Ctr.*, 3:09-CV-925, 2010 WL 2403723, at *3 (N.D. Tex. June 14, 2010); *Oinonen v. TRX, Inc.*, No. 3:09-CV-1450, 2010 WL 396112, at *2 (N.D. Tex. Feb. 3, 2010). This Court will not allow that.

Therefore because Owen failed to exhaust his administrative remedies on his disparate impact claim, the Court **GRANTS** STM's Motion to Dismiss and **DISMISSES** this claim **with prejudice.**[7]

B.      *The Disparate Treatment Claim*

Next, STM attacks Owen's disparate treatment claim. Disparate treatment claims under the ADEA utilize the *McDonnell-Douglas* burden-shifting analysis. *Moss v. BMC Software, Inc.*, 610 F. 3d 917, 922 (5th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). In order to make *prima facie* case, one must show "(1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she was discharged or suffered some adverse employment action; and (4) she was either replaced by someone outside the protected class, or was treated less favorably than other similarly situated employees outside the protected group." *Walker,* 2010 WL 2403723, at *2 (citations omitted). To survive a motion to dismiss, however, one need not necessarily plead a *prima facie* age discrimination claim. *Flores v. Select Energy Services, L.L.C.*, 486 F. App'x 429, 432 (5th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Nevertheless, because "liability [for disparate treatment under the ADEA] depends on whether age actually motivated the

---

[7] Because the Court disposes of Owen's disparate impact claim for failure to exhaust administrative remedies, it need not consider whether, that aside, he also fails to state a claim on that point.

employer's decision," *Oinonen*, 2010 WL 396112, at *3, "a plaintiff must set forth allegations that would enable the court to reasonably infer that the employer took the adverse employment action because of the plaintiff's age." *Woldetadik v. 7-Eleven, Inc.*, 881 F. Supp. 2d 738, 741 (N.D. Tex. 2012). In other words, one must prove, by a preponderance of the evidence, that his age was the "but-for" cause of his employer's decision. *Moss*, 610 F.3d at 922 (citations omitted); *see also Oinonen*, 2010 WL 396112, at *3.

Here, STM suggests Owen cannot do that because Blanchard's comments mention experience and not age. Doc. 21, Def.'s Br. 12. STM argues, "[g]uessing at how long an attorney has been practicing law or whether an attorney is set in their ways based on the specific age of the attorney is pure speculation." Doc. 23, Def.'s Reply. 5–6. Also muddying the waters, according to STM, is the fact that Owen failed to discuss (1) the age of the attorney who ultimately took the position in question (other than calling him "younger"); (2) the experience and knowledge that individual possessed; (3) the experience and knowledge required for the job; (4) how STM may have valued the experience and knowledge of Owen versus the person selected; and (5) Owen's own qualifications, aside from a few facts. Doc. 21, Def.'s Br. 12–13. Nonetheless, Owen need not plead every element of a *prima facie* disparate treatment claim in order to survive a motion to dismiss. *See Flores*, 486 F. App'x at 432.

Owen recognizes this and points to *Leal v. McHugh* as a favorable, analogous case where the Fifth Circuit found that a plaintiff had pled an adequate disparate treatment claim under the ADEA—or, more accurately, that the district court erred when it held that he had not. 731 F.3d 405 (5th Cir. 2013). In *Leal*, the plaintiff's complaint indicated he was: (1) within the protected class; (2) qualified for newly-created position; (3) not selected; (4) that a "substantially younger employee" was

-10-

selected instead; and (5) that an official with authority over hiring indicated the department needed "new blood." *Id.* at 413. Owen suggests that his own complaint tracks *Leal.* He says he alleged that he (1) is over forty, and therefore within the protected class; (2) has been practicing law since 1982 and was practicing at STM at the time he was denied an interview, and therefore qualified; (3) not selected for the position; (4) that STM hired a younger, less experienced, and less capable attorney; and (5) an official with decision-making authority over the selection said he wanted someone "who had not been practicing so long," as such attorneys "were set in their ways and inflexible to doing things differently." Doc. 22, Pl.'s Resp. 10–11.

Comparing Owen's complaint to the plaintiff in *Leal*'s is instructive in analyzing whether Owen's claim survives at this stage. Determining whether Owen has pled a *prima facie* disparate treatment case, as STM seems to call for, is not. Therefore the Court compares Owen's and the plaintiff in *Leal*'s respective complaints and finds that the former mostly tracks the latter: Owen has alleged that he is over forty, and thus within the protected class; was not selected for the position in question; and that an individual with decision-making authority, Blanchard, uttered the words Owen says demonstrate STM engaged in age discrimination. *See* Doc. 19, Second Am. Comp. ¶¶ 7, 11, 16. There are, however, a few points that warrant further discussion.

First and foremost is the issue of whether stating a preference for attorneys "who had not been practicing so long," because such individuals are "set in their ways and inflexible to doing things differently," can be read as "code words" calling for younger employees, much like the *Leal* Court read "new blood" as "code words" calling for younger employees. On the one hand, at least one court has found far less thinly veiled comments do *not* constitute "code words" referring to age. *See, e.g. Young v. Harris Health Care*, Inc., 226 F.3d 643, 2000 WL 1029180, at *2 (5th Cir. July 14, 2000)

(unpublished table decision) (finding that supervisor's comments—that (1) plaintiff was an "old bull dog" and "menopausal"; (2) he would "never hire anyone as old" as 40; and (3) if plaintiff were younger, she "wouldn't take her job so seriously"—did not constitute direct evidence of animus). That being said, that court based its holding, at least in part, upon the fact that these words were not connected with the employment decision. *See id.* (finding plaintiff provided no evidence that the manager made such comments in connection with the employment decision). Here, in contrast, Owen alleges Blanchard offered these words as an explanation for why he was not going to be interviewed for the position in question. On balance then, this factor is inconclusive, but, for the reasons stated below, this does not affect the Court's decision.[8]

The second point meriting discussion is whether Owen's allegation that STM hired a younger attorney with "less experience and capability" is conclusory and therefore insufficient under *Iqbal*. *See Iqbal*, 556 U.S. at 678. Owen's comments here are indeed different than the plaintiff in *Leal*'s. In *Leal*, the plaintiff alleged that the individual hired instead of him was "substantially younger." *Leal*, 731 F.3d at 413. Here, Owen says the other individual was simply "younger." Doc. 19, Second Am. Compl. ¶ 11. The use of the word "substantial," however, is important. "Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is "substantially" younger than the plaintiff is more indicative of age discrimination than is the fact that

---

[8] *Ford v. Potter* held that, in order for comments to constitute direct evidence of disparate treatment under the ADEA, they must be "(1) age related, (2) proximate in time to the decision not to select Ford, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision." 3:07-CV-1039, 2008 WL 4791511, at *2 (N.D. Tex. Nov. 4, 2008) (citations omitted). But that case dealt with an ADEA disparate treatment claim in the more stringent summary judgment context. *Id. Leal*, on the other hand, examined a district court's decision to grant Defendant's Motion to Dismiss. It is therefore distinguishable, evidenced by the fact that the *Leal* Court made no mention of *Ford* when it determined that Appellant's Complaint—which alleged that management was looking for "new blood"—provided enough to survive a Motion to Dismiss. *Leal,* 731 F.3d at 413.

the plaintiff was replaced by someone outside the protected class." *See Leal*, 731 F.3d at 411 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). Owen, however, alleged neither. Thus this factor weighs against him.

Third is whether Owen has sufficiently alleged he was qualified for the position in question. STM faults Owen for not detailing his own experience and knowledge; not discussing the experience and knowledge of the individual who was ultimately hired; and not discussing how STM valued the experience and knowledge of the two in relation to one another. Doc. 21, Def.'s Br. 12–13. Though Owen need not necessarily do all of the above, here his remarks differ substantially from the plaintiff in *Leal*'s. The *Leal* plaintiff indicated he worked at his job for over twenty-years, often receiving top performance ratings in his department. 731 F.3d at 408. Owen, on the other hand, points only to the fact that, at the time he applied for the full-time position, he had been practicing law for thirty-plus years and had served two stints as a temporary attorney at STM during that time—one for approximately nine months, another for approximately twenty-one months. *See* Doc. 22-1, Ex. A. EEOC Charge. Qualification for a particular position cannot be measured solely in time. One can work at a profession for many years without acquiring the necessary skills to perform a particular job. Owen's allegations here, too, then, are somewhat sparse.

Last, and in contrast to the plaintiff in *Leal*, Owen did not assert that STM failed to follow its own procedural rules in hiring another individual for the position he sought. *Compare Leal*, 731 F.3d at 408 ("Appellants have asserted that Defendant's failure to follow its own procedural rules for making selections —i.e., by choosing [others] before the second candidate list was issued . . . "). While this sort of allegation is, of course, not strictly necessary, it is a feather present on *Leal*'s scale but not Owen's.

On balance, Owen has not pled facts sufficient to state a disparate treatment claim and thus survive STM's Motion to Dismiss. Again, while he does necessarily need to plead a *prima facie* case, he has failed to allege facts indicating that the individual who was ultimately hired instead of him was outside of the protected group, or else substantially younger; and that he himself was qualified for the position.[9]

For these reasons, STM's Motion to Dismiss Owen's disparate treatment claim is **GRANTED** and Owen's claim is **DISMISSED without prejudice.**

C. *Whether Punitive and Compensatory Damages are Available*

In his complaint, Owen asks for compensatory and punitive damages, which STM argues are unavailable under the ADEA. Doc. 21, Def.'s Br. 13–14 (citing *Smith v. Berry*, 165 F.3d 390, 396 (5th Cir. 1999)). Owen says that, "[t]o the extent the Court finds that punitive and/or compensatory damages are not allowed by law, [he] will concede this issue." Doc. 22, Pl.'s Resp. 11. Indeed, as STM points out, punitive damages are unavailable under the ADEA. *Smith*, 165 F.3d at 395 ("Unlike Title VII, the ADEA does not provide for punitive damages.") (citation omitted). Whether compensatory damages are available is a more difficult question. The Fifth Circuit has made clear that "damages for mental pain and suffering . . . are not available . . . [under the ADEA] alone." *Id.* (citation omitted). But "[t]he vast majority of cases that make the statement that . . . compensatory damages are not recoverable under the ADEA are cases where the plaintiff sought damages for pain and suffering or

---

[9] STM also suggests that Owen's response "is based primarily on cases decided long before *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)" and therefore should be dismissed. Doc 23., Def.'s Reply 5. The Court does not understand STM's argument. *Flores*, which reiterates that one need not plead a *prima facie* disparate treatment claim to survive summary judgment, was decided in 2012, well after either *Twombly* or *Iqbal*. *See Flores*, 486 F. App'x 429. And *Leal v. McHugh*, also cited by Owen, was decided in 2013, again, well after either *Twombly* or *Iqbal*. 731 F. 3d 405, 410–411 (5th Cir. 2013).

mental and emotional anguish." *Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 260 (5th Cir. 1985). Where a plaintiff "presents a loss for tangible, easily measurable damages rather than intangible damages such as pain and suffering," on the other hand, courts tend to take a closer look. *Id.* In at least one case, the Fifth Circuit found that the facts at hand were "sufficiently different from past ADEA cases," enough "to require [the Court] to fully analyze [the] case rather than to simply affirm based on the holdings in the cases stating that . . . compensatory damages are not recoverable." *Id.; see also Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013) (suggesting compensatory/mental anguish damages are at least possible under the ADEA). Accordingly, the Court is not prepared to declare compensatory damages categorically inapplicable here. Thus STM's Motion on this point is **GRANTED in part** and **DENIED in part.** Plaintiff may not recover punitive damages, but, depending on the facts, may recover compensatory damages.

## IV.

## CONCLUSION

For these reasons, STM's Motion is **GRANTED in part** and **DENIED in part.**

1. The Court **GRANTS** STM's Motion to Dismiss Owen's disparate impact claim and **DISMISSES** it **with prejudice.**

2. The Court **GRANTS** STM's Motion to Dismiss Owen's disparate treatment claim and **DISMISSES** it **without prejudice for refiling.**

3. The Court **GRANTS** STM's Motion to Dismiss Owen's claim for punitive damages and **DISMISSES** it **with prejudice.**

4. The Court **DENIES** STM's Motion to Dismiss Owen's claim for compensatory damages**.**

Should Owen wish to replead his disparate treatment claim, he has **thirty-days** to do so, meaning he must re-file by **June 13, 2016.**

**SO ORDERED.**

**SIGNED May 12, 2016.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE