# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES OWEN | § § § | |
| v. | § § | CASE NO. 3:15-CV-1186-S |
| STMICROELECTRONICS, INC. | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant STMicroelectronics, Inc.'s ("STM") motion for summary judgment [54]. For the following reasons, the Court denies STM's motion for summary judgment.

### I. THE AGE DISCRIMINATION ALLEGATIONS

Charles Owen began working for STM in 2007. STM hired him on a temporary basis to perform general in-house counsel duties while the employee who normally fulfilled those duties, Jackie Nguyen, was on assignment in China. Owen's duties included drafting and negotiating commercial contracts, licensing agreements, technology agreements, and real estate leases. He also reviewed non-disclosure agreements ("NDAs"). Owen's position ended in 2008 when Nguyen returned from China.

In April 2013, Bruce Quill, an employee in STM's human resources department, contacted Owen about returning to the company. STM was seeking a temporary employee to review NDAs, as the paralegal normally responsible for that job had left STM. Owen accepted the position. His main duties were reviewing NDAs and maintaining a spreadsheet tracking the NDAs. Owen primarily worked with Terry Blanchard during this time. Owen received no negative feedback on his performance.

That same year, Owen learned that a full-time, permanent corporate counsel position (the "Senior Position") had opened up because Jackie Nguyen left STM. He also learned that STM planned to hire an attorney to replace the paralegal responsible for reviewing NDAs (the "Junior Position"). Owen expressed interest in the Senior Position to Quill, STM's General Counsel, and Blanchard. STM's General Counsel indicated that Blanchard would be the ultimate decision maker. Blanchard told Owen that, while he was qualified for the position, STM did not want "someone with so much experience that they would be inflexible." Pl.'s App. 28.

Blanchard drafted the posted job advertisement for the Senior Position, which stated that "[t]he right candidate will have strong academic and employment credentials[,]" that STM was seeking a licensed attorney "with about 10 years of experience," and that big firm and in-house counsel experience were "preferred." Def.'s App. 10. Ultimately, STM did not choose Owen for the Senior Position. STM instead selected Sean Barrett. Barrett was 36 years old at the time, had an undergraduate degree from McGill University and a law degree from Georgetown University, had nine years of legal experience at large law firms and as in-house counsel, and had worked on a variety of complex corporate transactional matters. When Owen sought and was rejected for the position, he was 64 years old.

STM hired Adam Hoffman for the Junior Position. Soon thereafter Owen's position at STM was eliminated because the legal department was fully staffed. On or about June 4, 2014, Owen filed a charge of discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission – Civil Rights Division.

## II. THE COURT DENIES SUMMARY JUDGMENT

### A. *Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory

3

facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## B. *Age Discrimination*

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful "to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiffs seeking to prove age discrimination can rely on either direct or circumstantial evidence. *See, e.g., Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). Because Owen is relying on circumstantial evidence, the Court evaluates his claim under the *McDonnell Douglas* burden-shifting framework. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015); *see also Conboy v. Edward D. Jones & Co., L.P.*, 140 F. App'x 510, 2005 WL 1515479, at *3 (noting that the Fifth Circuit has "plainly recognized that [the *McDonnell Douglas* framework] has equal applicability in the context of an ADEA action."). Under this framework, Owen must first establish a prima facie case of age discrimination. *Goudeau*, 793 F.3d at 474. To do so, he must show that: "(1) he was not hired for the position that he sought; (2) he met the requisite qualifications for the position; (3) he was over the age of forty at the time that he was not hired; and (4) an individual who was not a member of the protected class, or a younger individual, was hired for the position." *Conboy*, 2005 WL 1515479, at *3. The prima facie case "creates a presumption that the employer unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

If Owen establishes a prima facie case, the burden shifts to STM to provide a legitimate, nondiscriminatory reason for its decision not to hire him. *Id.* This burden is "only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (citing *Burdine*, 450 U.S. at 255-56). If STM meets

4

this burden, the inference of discrimination disappears, and the burden shifts to Owen to show that the proffered reasons are mere pretext for intentional discrimination. *See Burdine*, 450 U.S. at 255-56. Owen may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578) (5th Cir. 2003)).

The parties dispute only two elements of Owen's ADEA claim: 1) whether Owen was qualified for the Senior Position; and 2) whether STM's proffered explanations for not hiring Owen are pretext for intentional age discrimination. Because Owen has proffered sufficient evidence to create a genuine factual dispute as to both elements, the Court denies summary judgment.

The parties do not dispute that Owen was not hired for the Senior Position, that he was over the age of forty at the time he was not hired, or that STM hired someone substantially younger than him to fill the position. Thus, the only contested element of Owen's prima facie case is whether he was qualified for the position. Owen's burden at this stage is "not onerous." *Burdine*, 450 U.S. at 253. The Fifth Circuit focuses on "objective job qualifications" when assessing the qualified element of the prima facie case. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 n.7 (5th Cir. 2015).

STM argues that Owen was not qualified for the position because he had no experience working for a large law firm and did not have, in Blanchard's opinion, a strong academic background. Owen argues that his lack of big firm experience is irrelevant because that qualification was only listed as "preferred." Def.'s App. 10. As to the strong academic credentials requirement, the parties dispute the meaning of the phrase. STM argues that Owen

5

does not meet this criterion because he did not go to a highly ranked law school. Owen argues that he does meet the criterion because he was invited to join his school's Law Review based on his grades. Further, he disputes the use of arbitrary law school rankings to evaluate what constitutes strong academic credentials.

STM also contends that Owen was not qualified because his performance when reviewing NDAs was not satisfactory and because his email expressing interest about the Senior Position and his résumé were full of errors and typos. Owen retorts that Blanchard said he was "extremely qualified" for the position and that he performed the duties of a Corporate Transactional Attorney from 2007 to 2008. Most persuasively, he argues that he possesses the only required qualifications listed in the job posting because he is a licensed attorney, has a JD, and has more than ten years of experience.[1] Further, he served as in-house counsel for several large, international companies. Because Owen has shown that he met the only required objective qualifications and has created a fact dispute as to whether he met at least some of the preferred qualifications, determining whether he was qualified for the Senior Position presents a genuine issue for trial. Thus, the Court denies summary judgment on this element.

STM has advanced several legitimate, nondiscriminatory reasons for its failure to hire Owen. Namely, STM did not believe Owen was qualified for the job, Owen performed poorly in his role reviewing NDAs, and Blanchard found errors in Owen's résumé and in the email he sent Blanchard to express his interest. Further, STM argues that the successful candidate was better qualified than Owen. Owen does not dispute that STM has proffered facially legitimate reasons but instead responds that these reasons are merely pretext for age discrimination.

---

[1] The job posting actually sought someone with "about 10 years of experience." Def.'s App. 10. Owen had more than twenty. However, the parties do not dispute whether having too many years of experience would suffice to disqualify Owen.

To show pretext, Owen must provide evidence of disparate treatment or show that STM's reasons are false or unworthy of credence. One way to show pretext is to establish that Owen was "clearly better qualified" than Barrett. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)). To show that Owen was clearly better qualified, he "must present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over [Owen] for the job in question.'" *Moss*, 610 F.3d at 923 (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)). Owen has not made that showing here. Barrett, the successful candidate, had strong academic and employment credentials, worked on a variety of complex corporate transactional matters, interviewed extremely well, and was bilingual. A reasonable employer could have selected Barrett over Owen for the Senior Position, so Owen was not clearly better qualified than Barrett.

However, a plaintiff can demonstrate pretext by other methods. Owen has successfully showed that STM's reasons may be false or unworthy of credence because of a comment Blanchard allegedly made to him while discussing Owen's interest in the Senior Position. Owen avers that Blanchard said STM did not want someone with so much experience that they would be inflexible, and Owen argues that comment was simply code for Owen being too old. To qualify as circumstantial evidence of intentional discrimination a remark must "demonstrate discriminatory animus" and "be made by a person primarily responsible for the adverse employment action." *Laxton*, 333 F.3d at 583 (citing *Russell*, 235 F.3d at 225).[2]

---

[2] There are two versions of this test, and the parties dispute which one applies. However, the analysis would be the same under either. The *Brown v. CSC Logic, Inc.* test is used when the plaintiff is using the remark as direct evidence of discrimination. 82 F.3d 651, 655 (5th Cir. 1996). This test requires that the comment be age-related, proximate in time to the employment decision, made by an individual with authority over the employment decision, and related to the employment decision. *Moss*, 610 F.3d at 929. The only dispute here is whether the comment was age-related, which is addressed below.

7

There is no question that Blanchard, the individual who made the statement, was the person primarily responsible for deciding to hire Barrett and not to hire Owen. The parties focus their arguments on whether the comment is age related or shows a discriminatory animus. STM argues that the statement only refers to years of experience in practicing law and not age. Owen responds that the statement is code for age discrimination. *Bienkowski v. Am. Airlines, Inc.* is instructive. 851 F.2d 1503 (5th Cir. 1988). In that case, the plaintiff's supervisors allegedly commented on his inability or unwillingness to "adapt" to new systems. *Id.* at 1507 n.4. The Fifth Circuit was "unwilling to assume that indirect comments about [plaintiff's] age and adaptability are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of [plaintiff's] performance." *Id.* at 1507.

In the instant case, a reasonable juror could find Blanchard's comment about experience and inflexibility to be indicative of age discrimination. Also, as in *Bienkowski*, the parties sharply disagree about STM's reasons for not hiring Owen, which could lead a jury to find that STM's decision was actually motivated by discriminatory animus. STM offers a single email from Nguyen criticizing Owen's performance reviewing NDAs to prove that Owen's performance was not satisfactory. Owen retorts that neither this nor any other criticism was communicated to him and that STM chose to hire him again after he worked for a year in a position extremely similar to the one for which STM failed to hire him. He also reiterates the arguments he made about his qualifications to show that STM's proffered reasons for not hiring him are false or unworthy of credence. Ultimately, though Owen's evidence is "barely sufficient," the Court "cannot conclude that no reasonable jury could return a verdict of age discrimination," and the issue is more appropriate for resolution "under the heat of trial and the bright light of cross-examination." *Bienkowski*, 851 F.2d at 1507-08.

### III. CONCLUSION

For the foregoing reasons, the Court denies STM's motion for summary judgment.

**SO ORDERED.**

SIGNED May 29, 2018.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE